IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MATTHEW SHORT,

       Plaintiff,

       v.                       Case No. 6:25-cv-01178-HLT-BGS

LKQ PICK YOUR PART CENTRAL,
LLC,

       Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Matthew Short filed this putative class action for consumer violations arising out of an allegedly undisclosed charge for a warranty at a self-service salvage yard run by Defendant LKQ Pick Your Part Central, LLC. Short alleges a claim under the Kansas Consumer Protection Act ("KCPA") and a claim for unjust enrichment.

LKQ moves to dismiss based on four arguments: (1) lack of standing, (2) no loss by Short under the KCPA, (3) Short's failure to plead the KCPA claim with particularity, and (4) failure to plausibly allege an unjust-enrichment claim. Doc. 16. The Court denies the motion. Short has alleged monetary loss that suffices to give him standing and shows a loss under the KCPA. And he has plausibly alleged a KCPA claim and an alternative unjust-enrichment claim.

I.      BACKGROUND[1]

Short is a Kansas resident. Doc. 4 at ¶ 6. LKQ is a business entity operating a self-service salvage yard in Kansas. *Id.* ¶ 8. LKQ operates locations all over the country; in Kansas, the only location is in Wichita. *Id.* ¶ 14. The Wichita location is a self-service salvage yard where

---

[1]   The following facts are taken from the First Amended Complaint (Doc. 4) and are accepted as true for purposes of the motion to dismiss.

consumers remove and purchase parts from salvaged vehicles. *Id.* When a consumer buys a part, LKQ automatically charges the consumer a 90-day warranty unless it is affirmatively declined before the sale. *Id.* ¶ 15. The warranty allows the consumer to return the part within 90 days for refund or exchange. *Id.* Without the warranty, the part is purchased as-is. *Id.* Although the warranty is optional, it is added automatically in LKQ's system for "convenience" unless the consumer requests otherwise. *Id.*

LKQ's sales associates do not notify consumers about the warranty charge. *Id.* ¶ 16. The sales associate just states a total sale price without disclosing that it includes a separate warranty charge. *Id.* LKQ contends signs disclosing the warranty are posted in the checkout area. *Id.* ¶ 17. But Short alleges that, to the extent the signs exist, they are legally inadequate because they are not conspicuous, include intentionally misleading or ambiguous language, and "are functionally inaccessible to blind, visually impaired, or illiterate consumers." *Id.* If a consumer seeks a refund for the warranty after the sale has completed, LKQ's policy is to refuse the refund. *Id.* ¶ 18.

Short visited LKQ's Wichita location on September 27, 2023. *Id.* ¶ 19. He selected a hood for a 2006 Jetta, which was unmarked and had no price tag. *Id.* ¶ 20. At the checkout, the sales associate said the total price was $123.64. *Id.* ¶ 21. The sales associate did not mention a warranty or any other fees. *Id.* The sales associate did not tell Short about the warranty charge or direct him to any sign. *Id.* Short paid and received a receipt. *Id.* After the transaction was complete, Short looked at the receipt and saw a charge labeled "90-day GU." *Id.* ¶ 22. Plaintiff asked about it and was told it was for a warranty. *Id.* Short requested a refund, and LKQ refused. *Id.* Short tried to return the hood entirely, and LKQ refused to refund the full price. *Id.*

Short alleges a violation of the KCPA and unjust enrichment. *Id.* ¶¶ 33-45. Short also asserts class action allegations on behalf of all people who were charged with a warranty at LKQ's

Kansas location in the past four years. *Id.* ¶¶ 23-32. Short seeks damages as well as injunctive relief in the form of prohibiting LKQ from selling the product with the warranty automatically added.

## II.    STANDARD

### A.    Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The burden of alleging standing is on a plaintiff. *Id.* at 561. At the pleading stage, the court accepts as true the factual allegations in the complaint. *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015). But it does not accept "conclusory allegations, unwarranted inferences, or legal conclusions." *Id.*[2]

### B.    Plausibility

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A claim is plausible if there is sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation

---

[2]    LKQ's motion presents a facial challenge to subject-matter jurisdiction because it targets only the allegations in the complaint in challenging standing. *See Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 829 (10th Cir. 2022). The Court likewise limits its consideration to those well-pleaded facts in the complaint.

omitted). A court must accept as true all well-pleaded allegations in the complaint, but it does not accept legal conclusions or conclusory statements. *Id.* at 678-79.

## III.   ANALYSIS

### A.   Standing

Article III standing requires, among other things, a plaintiff to demonstrate that he has suffered a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[C]ertain harms readily qualify as concrete injuries under Article III." *Id.* at 425. One such obvious harm is monetary injury. *Id.* Such a concrete injury must be shown even where a statutory right is otherwise violated. *Id.* at 426.

LKQ argues Short has not alleged he suffered a concrete or particularized injury because when he went to purchase the Jetta hood, he was given a "total price" of $123.64, which he was willing to and did pay, and that "unbeknownst to [Short], his purchase also included the [warranty]—something in addition to the 2006 Jetta hood that he paid for." Doc. 17 at 8-9 (emphasis in original). LKQ argues it is not a sufficient injury because Short "actually received even more than what he thought he was purchasing." *Id.* at 9.

But this is not what is alleged in the complaint. Short alleges that he was quoted $123.64 as the price of the Jetta hood and believed that was only the price of the hood and applicable taxes and regulatory fees. Doc. 4 at ¶¶ 21, 37. In reality, however, the hood Short purchased cost less than what he paid, while an additional item (the warranty) was added and Short unknowingly[3] paid for it. The warranty was not an additional bonus that was free with his purchase. It was a separate item for which he unknowingly paid. In other words, Short didn't receive "even more than what

---

[3]   Although the added warranty was allegedly disclosed by signage and a website, Short alleges those disclosures were not sufficient.

he thought he was purchasing," Doc. 17 at 9, but instead he paid for more than what he thought he was purchasing. This came at a financial cost to Short. That is more than mere "confusion," as LKQ alleges. *See id.* (citing *Shields*, 55 F.4th at 830). It is a concrete monetary injury sufficient to confer standing. *See TransUnion LLC*, 594 U.S. at 425 (stating that "certain harms readily qualify as concrete injuries under Article III . . . such as physical harms and monetary harms").

LKQ tries to draw parallels to other cases where there was no concrete injury, but those arguments are not persuasive. LKQ argues Short's claimed injury is akin to a case where "a plaintiff . . . purchased a product and later wished they had not done so." *See Ferguson v. Pottery Barn, Inc.*, 2022 WL 16842310, at *3 (N.D. Okla. 2022) (internal quotation and citation omitted); *see also Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) ("The fact that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment—which is all we have here . . . ."). But the facts alleged here are different. It is not that Short purchased a hood and now has had second thoughts about it or discovered something about the hood that gives him regret. He has alleged he purchased the hood and, unbeknownst to him, also purchased a warranty he did not want and did not know was part of the deal. It is more than regret or disappointment about a purchase. Short is not disappointed about the deal he got on the hood. He is upset about the warranty he allegedly did not know he was buying. That is more than the alleged injury that was insufficient in *Laufer v. Looper*, 22 F.4th 871, 877-78 (10th Cir. 2022). In *Laufer*, the plaintiff claimed she was not provided "the information she needed as a disabled person to access" the hotel's online reservation system. *Id.* But she had no plans to visit the hotel or book a room, and thus she had no harm. *Id.* Here, Short was not given information about the warranty and, as a result, he paid for it. Such monetary harm is a concrete injury.

5

Nor is this case like those injuries frequently alleged in the data-breach context, where a plaintiff may try to attribute some unspecified part of services purchased to data security. *See, e.g.*, *C.C. v. Med-Data Inc.*, 2022 WL 970862, at \*9 (D. Kan. 2022) ("Based on this overpayment theory, plaintiff alleges that some 'indeterminate part' of her payment to defendant's businesses associates for healthcare services went to defendant for data security."). Here, Short has alleged that the amount he paid covered not just the hood, but the warranty, which was a line item on the receipt. Although the complaint does not state the precise amounts of each, it does allege that the sales associate stated a price that included (without adequate disclosure) a separate charge for the warranty. *See* Doc. 4 at ¶¶ 16, 21. This is sufficient to state an Article III injury. LKQ's motion is denied on this point.

### B.  Loss Under the KCPA

LKQ argues Short must allege a "loss" to bring a class action under the KCPA. *See* K.S.A. § 50-634(d) ("A consumer who suffers loss as a result of a violation of this act may bring a class action . . . ."); *see also Benedict v. Altria Grp., Inc.*, 241 F.R.D. 668, 678 (D. Kan. 2007) ("Consistent with the Kansas Supreme Court's interpretation of subsection (b) of [K.S.A. § 50-634] in *Finstad*, this court finds as a matter of law that [K.S.A. § 50-634(d)] requires the same causal connection. Thus, Ms. Brown must show that she suffered a loss as a result of defendants' allegedly false statements regarding their light cigarettes.");[4] *cf. Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 691 (Kan. 1993) ("A loss or injury resulting from a violation of the Act is

---

[4]  *Benedict* was more focused on the causation question. 241 F.R.D. at 678. LKQ only briefly touches on the causation requirement in its motion, *see* Doc. 17 at 10-11, though Short does go into the issue of reliance in response, *see* Doc. 21 at 8-9. Because LKQ's motion is focused on whether a loss is alleged, *see* Doc. 24 at 4, the Court limits its analysis to that question.

not required in an action filed by the attorney general under K.S.A. 50-632 and K.S.A. 50-636; it is, however, required for one filed by a consumer under K.S.A. 50-634(b).").[5]

LKQ's argument on this issue is essentially the same as its argument that Short has not suffered sufficient injury to confer standing. And the cases cited, *see* Doc. 17 at 11, are distinguishable for many of the same reasons as the cases cited in the standing section. Those plaintiffs claimed no actual loss, while Short claims a monetary loss. For the same reasons discussed above, the Court denies the motion on this point.

### C.    KCPA

LKQ next argues Short did not plead his KCPA claim with particularity.[6] A willful omission claim requires a plaintiff to show:

> (1) plaintiffs were consumers under the KCPA, (2) defendants were suppliers under the KCPA, (3) defendants willfully failed to state a material fact, or willfully concealed, suppressed or omitted a material fact . . . and (4) plaintiffs and the class members have been aggrieved by defendants' willful failure to disclose a material fact, or by defendants' willful concealment, suppression or omission of a material fact . . . .

*In re Motor Fuel Temperature Sales Pracs. Litig.*, 867 F. Supp. 2d 1124, 1138 (D. Kan. 2012).[7]

On the third element, "a supplier has a duty to disclose a material fact if the supplier knows that

---

[5]    *Finstad* was discussing an individual action rather than a class action. At that time, the KCPA permitted a private action by a "consumer who is aggrieved by a violation of" the KCPA. *Finstad*, 845 P.2d at 691. As noted above, the class action provision in the KCPA now requires a "consumer who suffers loss as a result of a violation of this act." K.S.A. § 50-634(d).

[6]    Short "is not so sure" that Rule 9(b)'s particularity rule applies to KCPA claims. Doc. 21 at 11. But he then proceeds to assume that standard applies. *Id.* This Court has already concluded that claims under the "KCPA sound in fraud and, thus, are subject to Rule 9(b)'s heightened pleading standard and must be pleaded with particularity." *Pinkney v. TBC Corp.*, 2020 WL 1528544, at *6 (D. Kan. 2020); *see also PHH Mortg. Corp. v. Stuber*, 766 F. Supp. 3d 1162, 1178 n.12 (D. Kan. 2025) (noting that some courts have not applied Rule 9(b) where a KCPA claim rests on unconscionability rather than deception).

[7]    Neither party discusses nor identifies the elements of Short's KCPA claim. But the complaint states that LKQ "engaged in unlawful conduct, including willful deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts." Doc. 4 at ¶ 35.

the consumer is entering into a transaction under a mistake as to the material fact, and the consumer would reasonably expect disclosure of such material fact based on the relationship between the consumer and the supplier, the customs and trade or other objective circumstances." *Id.* at 1139. Under Rule 9(b) a claim alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, the complaint must "set forth the time, place, and content of the alleged wrongful conduct, the identities of the wrongdoers, and the harm caused." *Pinkney*, 2020 WL 1528544, at *6. The Court focuses on Short's claim and injuries, not the claims of unidentified class members. *See id*. at *4.

Here, Short alleges he visited LKQ's Wichita location on September 27, 2023 (the time and place). Doc. 4 at ¶ 19. When he went to purchase the Jetta hood, the sales associate said the total price was $123.64. *Id.* ¶ 21. The sales associate did not mention a warranty or other fees, did not mention that there was a warranty charge, and did not direct him to any sign or disclosure (the alleged wrongful conduct and wrongdoer). *Id.* After Short paid and received a receipt, he saw a charge labeled "90-day GU." *Id.* ¶ 22. Plaintiff asked about it, and the sales associate told him it was for a warranty. *Id.* Plaintiff did not want the warranty and requested a refund but was denied (harm caused). *Id.* The Court finds Short has pleaded his KCPA claim with sufficient particularity.

LKQ argues there are five pleading deficiencies. First, LKQ argues Short failed to allege that LKQ knew customers were purchasing parts under the mistaken impression that the warranty was not included, and that Short even alleged the warranty was disclosed on signs. Doc. 17 at 12; *see also* K.S.A. § 50-626(b)(3) (listing as a deceptive act prohibited by the KCPA "the <u>willful</u> failure to state a material fact, or the <u>willful</u> concealment, suppression or omission of a material fact" (emphasis added)); *Unruh v. Purina Mills, LLC*, 221 P.3d 1130, 1139 (Kan. 2009) (agreeing "that the use of 'willful' in the KCPA includes an intent to harm the consumer"). But the complaint

alleges that the warranty is added automatically unless a consumer specifically requests it be removed before the transaction. Doc. 4 at ¶¶ 15-16. LKQ's sales associates do not tell consumers about the additional warranty charge or direct them to any posted signs. *Id.* ¶ 16. To the extent signs disclosing the warranty are posted, Short alleges they are not conspicuous and are inaccessible. *Id.* ¶ 17. Even after a consumer discovers the charge, LKQ will not refund it. *Id.* ¶ 18. This is all evidence of intent. *See In re Motor Fuel*, 867 F. Supp. 2d at 1141 ("Although plaintiffs have not produced direct evidence that defendants had a profit motive in doing so, a jury could reasonably infer that defendants sold motor fuel at retail without disclosing or adjusting for temperature with a designed purpose or intent to do wrong or to cause injury to plaintiffs."). Whether Short will be successful on his claim in light of any posted signs or the website remains to be seen. But for now, it is sufficient to move past the pleading stage.

Second, LKQ argues Short did not plead with particularity that he did not visit LKQ's website before shopping, which seems implausible given the very specific part he sought. Doc. 17 at 13. But it is unclear why <u>not</u> visiting the website is a necessary element of Short's KCPA claim. Whether Short accessed the website and what the website says is perhaps a defense to Short's claim. But LKQ cites no authority stating that Short had to plead around it.

Third, LKQ argues Short has not provided the requisite particularity about his attempts to remove the guarantee after purchase. LKQ argues that his "prompt" request for a refund could have been outside the 90-day window and that he may not have even presented his receipt. Doc. 17 at 13-14. As an initial matter, it's not clear that Short's claim is based on the failure to refund the warranty, versus the charging of the warranty in the first place (though failing to refund the cost contributed to Short's injury). The complaint seems to base the KCPA claim on omissions that lead reasonable consumers into a transaction not knowing what is being purchased, *see* Doc.

4 at ¶ 37, and "automatically adding a warranty fee to purchases without informed, affirmative consent from the consumer," *id.* ¶ 39, rather than refusing to refund warranties already purchased. Beyond that, at this stage, the Court is required to accept the facts in the complaint as true and construe them in Short's favor. The Court is disinclined to dismiss any claims based on alternative interpretations of what is alleged.

Fourth, LKQ argues that Short has not identified any misrepresentations on any signage. But again, the primary gist of the claim is that the signage was inadequate, not that it just misrepresented something.

Fifth, LKQ argues that Short did not plead he was a "consumer" under the KCPA. *See* K.S.A. § 50-626(a) (stating that "[n]o supplier shall engage in any deceptive act or practice in connection with a <u>consumer transaction</u>" (emphasis added)); *see also* K.S.A. § 50-624(b) (defining consumer). But Short did allege his purchase of the hood was a "consumer transaction." Doc. 4 at ¶ 22. At this stage of the case, this is sufficient.

LKQ's motion is denied to the extent it argues Short failed to adequately plead a KCPA claim.

### D.      Unjust Enrichment

Finally, LKQ argues that Short's unjust-enrichment claim fails because he has failed to allege there is not an adequate remedy at law, especially in light of his KCPA claim, and because a valid contract governs the transaction. Doc. 17 at 15-16. In response, Short argues he is entitled to plead an alternative claim, particularly where it remains to be seen if the law provides complete relief or whether a contract governs the transaction. Doc. 21 at 15-16.

The Court finds Short is permitted at this stage to plead alternative claims. While he may not be able to collect on both claims, he may plead claims in the alternative. *See Ice Corp. v.*

*Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1171 (D. Kan. 2006). LKQ's motion is denied on this point.[8]

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 16) is DENIED.

IT IS SO ORDERED.

Dated: April 24, 2026                    /s/ *Holly L. Teeter*
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE

---

[8]   LKQ does not contend that the allegations fail to state a claim for unjust enrichment, only that a valid remedy at law or contract preclude such a claim. Doc. 17 at 15-16. The Court acknowledges that in *Pinkney* it dismissed an unjust-enrichment claim. 2020 WL 1528544, at *7. But as Short notes, there, the plaintiff did not address the argument about an adequate remedy at law, causing the Court to conclude that the plaintiff was "implicitly conced[ing] the merits of this argument." *Id.* Here, Short does address it and argues it is an alternative claim if statutory relief proves inadequate. In light of the allowance of alternative pleadings, this is sufficient at this stage.